# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| SCVT, LTD., | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-13-069 |
| | § | |
| NATIONAL FIRE AND MARINE | § | |
| INSURANCE COMPANY, | § | |
|   Defendant. | § | |

## MEMORANDUM AND ORDER

This insurance case is before the Court on the Motion to Compel Appraisal and Stay Proceedings Pending Appraisal ("Motion for Appraisal") [Doc. # 18] filed by Defendant National Fire and Marine Insurance Company ("National"), to which Plaintiff SCVT, Ltd. ("SCVT") filed a Response [Doc. # 20], National filed a Reply [Doc. # 21], SCVT filed a Surreply [Doc. # 22], and National filed a Reply to the Surreply [Doc. # 23]. Having reviewed the full record and the applicable legal authorities, the Court **grants** the Motion for Appraisal.

## I. BACKGROUND

SCVT owns an apartment complex in Victoria, Texas. In January 2013, 25 of the apartment units were damaged by a fire and were uninhabitable while they were being renovated.

An insurance policy (the "Policy") issued by National covered SCVT's property, including actual loss of business income while damage to the property was being repaired. The Policy includes an Appraisal provision that grants each party the right to demand an appraisal if the insurer and the insured disagree on the amount of loss.

The parties disagree on the amount of loss. They disagree about whether SCVT is entitled to lost rental income for 12 or 24 apartment units, the amount of loss per unit, and the date (April 2014 or August 2014) on which the entitlement to lost rental income ends. As a result, SCVT filed this lawsuit on August 28, 2013, in Texas state court. SCVT asserts causes of action for breach of contract, fraud, negligence, gross negligence, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. National filed a timely Notice of Removal. On July 3, 2014, National filed its Motion for Appraisal, which has been fully briefed and is ripe for decision.

**II.   ANALYSIS**

Appraisal clauses in insurance policies "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011). They are generally enforceable, absent illegality or waiver. *Id.* Indeed, courts "do not have discretion to ignore a valid

appraisal clause entirely." *In re Public Serv. Mut. Ins. Co.*, 290 S.W.3d 886, 893 (Tex. 2009).

In this case, SCVT argues that National waived its right to demand an appraisal by waiting an unreasonable amount of time before making the demand. Waiver of an appraisal clause requires "intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Universal Underwriters*, 345 S.W.3d at 407. The period of delay may be instructive on the parties' intent, but is not dispositive. *See id.* at 408. Additionally, the party asserting waiver must demonstrate that it has been prejudiced by the delay. *See id.* at 411.

### A. <u>Intent</u>

SCVT's only evidence of intent is National's delay in demanding an appraisal. SCVT notes that the lawsuit was filed on August 28, 2013, and the Motion for Appraisal was not filed until July 3, 2014, more than ten months later.

The amount of delay, and whether it is unreasonable, "must be measured from the point of impasse." *See id.* at 408. The analysis "requires an examination of the circumstances and the parties' conduct, not merely a measure of the amount of time involved in seeking appraisal." *Id.* "An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal." *Id.* "Using the point of

'impasse,' rather than the first sign of disagreement, corresponds with [the] definition of waiver as an 'intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Id.* at 409 (quoting *In re GE Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). Both parties must believe that additional negotiation would be futile; if either party genuinely believes negotiations are ongoing, that party cannot have intended to relinquish its right to appraisal. *In re Universal Underwriters*, 345 S.W.3d at 409.

In this case, SCVT provided notice of its business income claim to National in April 2013. National requested and obtained additional documentation from SCVT to support the claim. National submitted the additional information to its accountant for analysis. National's accountant provided a preliminary business income calculation on August 1, 2013. SCVT provided additional information later that month, then filed this lawsuit on August 28, 2013. National's accountant recalculated the business income opinion on September 6, 2013, increasing his analysis of the amount of SCVT's business income loss. On October 16, 2013, SCVT submitted a revised business income loss calculation, increasing the monthly loss amount by over $2,000.00 per unit. SCVT provided its expert report on February 27, 2014, decreasing its claimed monthly loss amount by more than $2,000.00 per unit. National's accountant reviewed the report and increased his calculation of SCVT's monthly loss

amount by approximately $600.00 per unit. The parties engaged in mediation on June 25, 2014. At that time, National became aware that additional negotiation would be futile. National filed its Motion for Appraisal on July 3, 2014, less than one month later.

The record shows that the parties continued to revise their business income loss calculation throughout the time between the filing of the lawsuit and the June 2014 mediation. The Court concludes that it was not until the mediation that both parties became aware that further negotiations would not be successful and, at that time, there was an impasse. National's demand for appraisal, less than one month thereafter, was within a reasonable time and does not indicate that National intentionally relinquished its right under the Policy to demand an appraisal. As a result, National has not waived its right to an appraisal and its Motion for Appraisal is granted.

### B. Prejudice

Even if National had waited an unreasonable amount of time before demanding an appraisal, "mere delay is not enough to find waiver; a party must show that it has been prejudiced." *In re Universal Underwriters*, 345 S.W.3d at 411. If the insured has not been prejudiced by any delay, "it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." *Id.* SCVT argues that it has been prejudiced because National has obtained information through

discovery during this lawsuit that it will use "as evidence that it is still evaluating the claim and therefore should not have to suffer the consequences of litigation." *See* Response, p. 6. It is unclear how discovery obtained during the lawsuit, which can be used during the appraisal process, constitutes prejudice to SCVT. Indeed, the Texas Supreme Court has noted that "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *In re Universal Underwriters*, 345 S.W.3d at 412. SCVT has failed to demonstrate that it has been prejudiced by National's delay, unreasonable or otherwise, in demanding an appraisal as allowed by the Policy.[1] As a result, SCVT has not demonstrated that National waived its right to demand an appraisal in this case.

### III.   CONCLUSION AND ORDER

The Policy requires an appraisal if demanded by either party. SCVT had failed to demonstrate that National unreasonably delayed demanding an appraisal, or that any prejudice resulted from the delay. SCVT, therefore, has failed to show that National intentionally waived its right to demand an appraisal under the Policy. As a result, it is hereby

---

[1]   The Policy does not contain any time limit for demanding an appraisal.

**ORDERED** that National's Motion to Compel Appraisal and Stay Proceedings Pending Appraisal [Doc. # 18] is **GRANTED**. The parties are directed to complete the appraisal process described in the Policy. It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** pending completion of the appraisal process. The parties are directed to file a joint status report on **October 15, 2014**, and every sixty (60) days thereafter until the appraisal process is completed, at which time the parties are to file an agreed motion to reinstate the case on the Court's active docket.

SIGNED at Houston, Texas, this 18th day of **August, 2014**.

_____
Nancy F. Atlas
United States District Judge